IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| **IN RE TIER 1 JEG** <br> **TELECOMMUNICATIONS CASES** | **Southern District of Iowa** <br><br> 4:07-cv-00043 <br><br> 4:07-cv-00078 (consolidated with 3:09-cv-00058) <br><br> 4:07-cv-00194 <br><br> 4:08-cv-00005 <br><br> 3:09-cv-00055 (consolidated with 3:09-cv-00059) <br><br> **Northern District of Iowa** <br><br> 5:07-cv-04095 (consolidated with 5:09-cv-04017) |

**RULING ON MOTION TO COMPEL
DISCOVERY FROM MCI COMMUNICATIONS SERVICES, INC.
D/B/A VERIZON BUSINESS SERVICES OF
FARMERS AND MERCHANTS MUTUAL TELEPHONE
COMPANY OF WAYLAND, IOWA
AND DIXON TELEPHONE COMPANY**

The above resisted motion [70], as amended [75], is before the Court. It is decided on the motion papers. LR 7.c. The Court will examine the disputed discovery requests in the order presented by movants.

**INT 8, RFP 12**. INT 8 asks Verizon to identify the average revenue per minute it received for long distance toll service in Iowa and the United States for years 2006-2010 including the components of the calculation. RFP 12 seeks documents "sufficient

to show the revenue Verizon received from the carriage of long-distance traffic from its customers to the Propounding LECs' network for conferencing traffic." Verizon objected to these requests on the grounds of breadth, burden and discovery relevancy. The breadth and burden objections are conclusory, not well supported and are **overruled**.

Movants assert these requests are relevant to Verizon's damages claims in that any losses from the alleged traffic pumping should be offset by additional revenue earned by Verizon from the traffic. They contend the failure to account for revenue earned from the allegedly unlawful increased conferencing traffic would result in a windfall and unjust enrichment to Verizon. Verizon responds first that in *Aventure v. MCI*, Case No. 5:07-cv-04095, this Court ruled in similar circumstances that Verizon's revenue under separate contracts with its customers had "no obvious relevance" to the issues in that case. *Id.*, Ruling on Cross-Motions to Compel [72] ("*Aventure* ruling") at 4. Second, Verizon contends the filed-rate doctrine precludes the Court from basing damages on anything other than the movants' tariffed rates or from considering their unjust enrichment claims. Finally, Verizon says it does not maintain the sought-after information in the ordinary course of its business.

Taking Verizon's arguments in turn, in *Aventure* the Court denied a motion to compel seeking information about revenue Verizon

had received from traffic terminated to Aventure's network. Aventure wanted the information to confirm Verizon "still [made] a lot of money even after the terminating access charges are considered." *Aventure* ruling at 4. As noted, the Court saw "no obvious relevance of Verizon's revenue receipts to the defense of the traffic pumping, tariff validity, and Switched Access Services allegations in [Verizon's] counterclaim." *Id*. Movants contend the *Aventure* ruling is distinguishable because the case did not involve an LEC's claim against Verizon for unjust enrichment as this case does, a valid distinction. As both the agency and case law have developed in the intervening years, unjust enrichment has achieved some prominence in the issues before the Court. In this case movants have demonstrated that what Verizon received in revenue for calls made by Verizon's customers using the movants' facilities is relevant to the determination of the parties' respective damages claims.

That the filed-rate doctrine precludes movants' unjust enrichment claim is at least an open question. *Compare Splitrock Props, Inc. v. Qwest*, No. 08-4172, 2009 WL 2827901, at *2 (D.S.D. 2009) *with Northern Valley Commun. LLC v. Qwest Commun. Corp.*, 659 F. Supp. 2d 1062, 1070 (D.S.D. 2009). "[A]n unjust enrichment claim may exist if this court determines the federal tariffs inapplicable." *INS, Inc. v. Qwest Corp.*, 385 F. Supp. 2d 850, 908 (S.D. Iowa 2005)(citing *INS, Inc. v. Qwest Corp.*, 363 F.2d 683,

694-95 (8th Cir. 2004)). That determination has yet to be made though it is perhaps more likely at this point. Movants' unjust enrichment claim remains in the case to which the revenue information sought by these requests is relevant.

That the revenue information is not maintained in the ordinary course of Verizon's business is no objection to discovery if it may be retrieved from sources within Verizon's control. On this Verizon states only that it "has confirmed that it does not track the revenue information sought in Interrogatory No. 8, and it does not have any documents sufficient to show the information requested in Document Request No. 12." This is not the same as saying that Verizon cannot, with reasonable inquiry, obtain the information sought in the interrogatory or that it does not have responsive documents. If either of these things is the case, Verizon must supplement its discovery responses accordingly.

The motion to compel is **granted** with respect to INT 8 and RFP 12.

**RFP 11**. As narrowed in the meet and confer process this production request asks Verizon to produce internal documents from January 1, 2005 relating to rate changes or contemplated rate changes for delivering Verizon long distance traffic to movants based in whole or in part on conferencing traffic. Verizon's original form, breadth and burden objections are conclusory, not well supported, and are **overruled**. As to relevancy, Verizon makes

the same arguments against production of rate change information as made with respect to INT 8 and RFP 12. The relevancy objection is **overruled** for the same reasons set out in the discussion above concerning those requests.

According to movants, Verizon has produced the requested documents concerning rate changes which were made, but not contemplated rate changes. Beyond the relevancy and other objections noted, Verizon gives no reason for withholding responsive documents relating to contemplated rate changes. The motion to compel is **granted** with respect to contemplated rate change documents within the scope of the request.

**INT 13**. This interrogatory, narrowed in the meet and confer process, asks Verizon if it has withheld or stopped payment to any IXC under leased cost routing arrangements ("LCR" contracts) for the carriage or delivery of conferencing traffic since January 1, 2005 including dates, the identity of the IXC and when, if ever, leased cost routing conferencing traffic recommenced. Verizon objected on the basis of breadth, burden, and discovery relevancy. Here again the breadth and burden objections are conclusory, not well supported and are **overruled**

Movants contend the interrogatory is relevant to Verizon's tariff invalidity claims and allegations that the conferencing traffic represented by the billed access charges was illegal. Verizon ceased paying access charges to movants on the

5

basis of its claim of illegality. According to movants, payments made to an IXC under an LCR contract are intended in part to compensate the IXC for access fees the IXC would pay a LEC for terminating the calls. If Verizon continued to pay LCR charges to IXCs for the delivery of the same traffic, movants believe that fact would be evidence of the legitimacy of their access charges for the traffic. Movants add that it is "inconsistent for the IXCs to continue paying each other the terminating access component of LCR payments while simultaneously refusing to pay the LECs such charges for the very same traffic." (Reply [72] at 3).

Verizon responds that whether the traffic was valid under the terms of Verizon's contracts with the IXCs is irrelevant to the question of whether the charges were supported by the movants' tariffs. Verizon in substance argues that the movants' defense that the conferencing traffic was considered by Verizon as legitimate for some purposes but not others is not a valid defense to its traffic pumping claim.

Verizon's payment of LCR charges to IXCs has little to do with tariff invalidity, but is relevant to issues pertaining to the cessation of payment of the movants' access charges. If the services the movants provided were not covered by their tariffs, they seek money under theories of *quantum meruit* and unjust enrichment for what the services were worth or the benefit received by Verizon. If compensation for the movants' services was

contemplated as a component of the LCR payments made by Verizon, that arguably lends support to movants' equitable claims for the services they provided. The information sought by movants is relevant to the claims and defenses of movants and to Verizon's claim it was justified in not paying movants' access charges. The motion is **granted** with respect to INT 13.

**RFP 13, 14**. These requests seek all agreements between Verizon and any IXC from January 1, 2005 relating to Verizon's delivery of long distance traffic to the movants (RFP 13) or delivery of long distance traffic of an IXC other than Verizon to movants (RFP 14) including leased cost routing agreements. The objections with respect to these RFPs raise the same issues as with respect to INT 13. For the same reasons given above with respect to INT 13, the motion is **granted** with respect to RFPs 13 and 14.

**RFP 18**. This document request seeks documents concerning agreements or arrangements Verizon had with "any other entity" since January 1, 2001 to share revenue for any telecommunications service provided by Verizon. Verizon objected on the basis that the request was vague, overly broad, unduly burdensome and sought information which lacked discovery relevancy. It later supplemented its response to elaborate on the relevancy objection.

In the meet and confer process movants explained that they sought:

> Those agreements which include any fee,

>charge, inducement or any other consideration Verizon pays to another person or entity in conjunction with their right or ability to provide local exchange services, long distance services, internet access services, payphone services, wireless services, SMS or text messaging services, or data services. Such entities may include but are not limited to, hotels, motels, inns, lodges and resorts, multiple dwelling buildings or structures, office parks; office buildings or structures; hospitals; airports; correctional facilities; media or entertainment companies; and shopping malls. "Fees", "charges", "inducements" and "other consideration" include but are not limited to payments for specific volumes of traffic; per-minute or per-transaction payments; flat monthly or annual payments; discounts below tariffed rates or other prevailing rates; waivers of recurring or nonrecurring charges, including waivers of special construction charges and installation charges; the provision of customer premises equipment or other equipment without charge; monetary reimbursement; and promises to purchase goods or services.

(Movants' Brief [70-1] at 11 n.3). Movants argue Verizon's revenue sharing arrangements are relevant to their defense that what they are doing is an accepted form of revenue sharing. They rely on the *Aventure* ruling which granted the LEC's motion to compel Verizon to disclose a revenue sharing arrangement with Long Lines Ltd. d/b/a Northwest Iowa Telephone of Sergeant Bluff because "Verizon's history of alleged involvement in an arguably comparable revenue sharing arrangement" was generally relevant to the defense that Aventure was engaged in legal revenue sharing. *Aventure* ruling at 3. The Court cautioned, though, that "[t]here may be a limit on how far Aventure may go down this path before relevancy becomes too

attenuated." *Id.* The request here, on its face and as supplemented by the movants in the meet and confer process, is much broader covering many kinds of arrangements for what movants characterize as revenue sharing, arrangements with all sorts of disparate entities pertaining to any telecommunications service over an eleven-year period. Full compliance with the request is bound to yield a great deal of information about arrangements which are not "arguably comparable" to what is involved in this case. Though Verizon's overbreadth and burden objections are again stated in conclusory terms, the Court views the request as patently overbroad to the extent of taking the request beyond the realm of reasonable relevance to the claims and defenses of the parties. Fed. R. Civ. P. 26(b)(1). Nor is the request reasonably calculated to lead to the discovery of admissible evidence. In fact, the breadth of the request as explained by movants violates the reasonable particularity requirement of Fed. R. Civ. P. 34(b)(1)(A). The motion is **denied** with respect to RFP 18.

  **RFP 33, 34**. By amendment to their motion movants ask the Court to compel production of the documents sought by these requests. RFP 33 asks Verizon to produce all documents pertaining to any analysis or decisions made by Verizon concerning the treatment of conferencing traffic under Verizon's wholesale contracts or least cost routing arrangements (RFP 33) and any financial or economic analysis conducted with respect to the

treatment of conferencing traffic under Verizon's wholesale contracts or least cost routing arrangements (RFP 34). In its resistance Verizon describes the requests as "incredibly burdensome." But in responding to the requests, Verizon did not object on the basis of undue burden. That objection has been waived and in any event is not supported. On discovery relevancy, which was the sole basis for Verizon's objections to the requests, the parties indicate the issues are the same as with respect to RFPs 13 and 14 discussed above. The Court makes the same ruling on discovery relevancy concerning RFPs 33 and 34 as made concerning RFPs 13 and 14. The motion is **granted** as to these requests.

The motion to compel [70] is **granted in part and denied in part in conformity with the discussion above**. To the extent granted Verizon shall supplement its discovery responses and provide responsive documents within thirty (30) days of the date hereof.

IT IS SO ORDERED.

Dated this 24th day of February, 2012.

_____
ROSS A. WALTERS
UNITED STATES MAGISTRATE JUDGE