IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

**IN RE TIER 1 JEG
TELECOMMUNICATIONS CASES**

**Southern District of Iowa**

4:07-cv-00043

4:07-cv-00078 (consolidated with 3:09-cv-00058)

4:07-cv-00194

4:08-cv-00005

3:09-cv-00055 (consolidated with 3:09-cv-00059)

**Northern District of Iowa**

5:07-cv-04095 (consolidated with 5:09-cv-04017)

**RULING ON MOTION OF AVENTURE
COMMUNICATION TECHNOLOGY, LLC
FOR LEAVE TO AMEND
AFFIRMATIVE CLAIMS**

**I.**

The above motion [214] is before the Court. Aventure seeks leave to amend its claims and counterclaims pleaded against AT&T Corp. ("AT&T"), Qwest Communications Corp. ("Qwest") and Sprint Communications L.P. ("Sprint"). Aventure's claims and counterclaims are pleaded in 4:07-cv-00043, 4:07-cv-00078, 4:07-cv-00194 and 4:08-cv-00005.[1] Aventure seeks leave to assert

---

[1] Aventure's motion for leave to amend was also filed in Northern District Case No. 4:07-cv-04095. Its claims in that case have previously been dismissed. The motion is denied as moot in that case.

affirmative claims that AT&T, Qwest and Sprint breached Aventure's interstate tariff by failing to pay it for originating and terminating interstate access services and, alternatively, that AT&T, Qwest and Sprint were unjustly enriched when they failed to pay for the delivery of calls from their customers to Aventure customers. Aventure argues relatively recent FCC decisions in *Connect America* and *All American Telephone*[2] give it good cause to assert these claims. It argues the IXCs will not be prejudiced because both claims in substance are already in its pleadings, though not expressly pleaded. AT&T resists, noting the scheduling order pleadings deadline expired on November 19, 2010 ([165] in 4:07-cv-00043). It asserts Aventure has failed to show good cause for a post-deadline amendment because the new claims could with diligence have been brought prior to the pleading deadline, and neither the *Connect America* nor the *All American Telephone* decisions provide good cause. Qwest admits it has understood Aventure to plead a claim against it for breach of Aventure's interstate tariff, but argues good cause is lacking for the addition of an unjust enrichment claim because such a claim would be futile and Qwest would be prejudiced by the untimely addition of

---

[2] The *Connect America* decision was a lengthy Report & Order & Further Notice of Proposed Rulemaking, 2011 WL 5844975 (FCC Nov. 18, 2011) and the *All American* decision was a January 20, 2011 Commission Memorandum Opinion and Order in *In the Matter of All American Telephone Co., et al. v. AT&T Corp.*, 26 F.C.C.R. 723, 2011 WL 194539 (2011).

the claim. In Qwest's view the *Connect America* decision does not provide support for an unjust enrichment claim. Sprint also argues it is prejudiced by the delay in seeking leave to amend and makes the same argument as AT&T on the lack of good cause.

In reply to AT&T, Aventure states that while its counterclaim Count I was captioned as a "Claim Under Communications Act" it is clear from the language of the counterclaim it was seeking damages for breach of tariff. Aventure continues that it is evident from AT&T's earlier Motion to Enjoin ([11] in 4:07-cv-00043) a related action in the Southern District of New York that AT&T realized this action was essentially the same as the action in that district which expressly pleaded breach of tariff and unjust enrichment. According to Aventure AT&T has pursued discovery in this case focused on Aventure's tariff and equitable arguments. Aventure also responds that good cause exists because the normal progression of these cases has been delayed for a lengthy period of time while the referral motions were under discussion. It notes that expert discovery is in stasis and no date has been set for trial. Aventure makes the same progression argument in reply to the resistances of Qwest and Sprint and in addition, in the case of both, asserts there is no prejudice from adding the unjust enrichment claim because unjust enrichment is an equitable claim closely related factually to its cousin, *quantum meruit*, which Aventure has pleaded in its claims against the resisting IXCs.

**II.**

Because a post-deadline motion for leave to amend seeks a *de facto* extension of a scheduling order deadline, the movant must show "good cause" as required by Fed. R. Civ. P. 16(b)(4). *See Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008)(citing *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008)). "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001)(citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)); *see Sherman*, 532 F.3d at 716-17; *Rahm v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006).

Aventure could, with diligence, have pleaded its breach of tariff and unjust enrichment claims prior to the pleading deadline. Other LECs did. Aventure itself pleaded both claims in the Southern District of New York action. Other circumstances make it nonetheless the better part of discretion to grant Aventure's motion.

The parties in these cases and others like them elsewhere, as well as courts, have been waiting for guidance from the FCC on issues relating to "traffic pumping" or "access stimulation." While Aventure and the resisting IXCs dispute the meaning and significance of the FCC's recent *Connect America*

4

decision, Aventure thinks it lends support to its claim it should be compensated for the interstate access services it has provided, either through an action for breach of its tariffs, *quantum meruit* (already pleaded), or unjust enrichment. All seem to agree that the *All American* decision issued in January 2011 makes Aventure's Communications Act claims at best doubtful. It is therefore understandable Aventure would want to recast the Communications Act claims as breach of tariff claims.

The Court also agrees with Aventure that the breach of tariff and unjust enrichment claims it seeks to bring by these amendments are not as a practical matter really new claims. Regardless of how cast, Aventure has complained in the case of each of the IXCs that it has not been paid for access services at the rates set forth in its tariffs and in these actions it seeks recovery of what it has not been paid, or its value.

*Quantum meruit* and unjust enrichment are separate theories of recovery. *Quantum meruit* recognizes an implied-in-fact contract to pay for the reasonable value of services provided, whereas unjust enrichment is a restitution remedy grounded in quasi-contract or implied-in-law contract in which one who has received the value of a benefit is held to pay for what has been inequitably retained. *See Iowa Waste Systems, Inc. v. Buchanan County*, 617 N.W.2d 23, 29-30 (Iowa App. 2000); *Iowa Network Services, Inc. v. Qwest Corp.*, 835 F. Supp. 2d 850, 904-16 (S.D.

5

Iowa 2005). Though distinct, both theories are often joined as alternatives where an express contractual (or here, direct regulatory) basis of recovery may not lie, and tend to be closely related factually. In fact, Aventure says its evidence under the two theories will be virtually identical. Based on the same facts, with *quantum meruit* already in these cases, the assertions of Qwest and Sprint that they will be prejudiced by lack of sufficient time to conduct discovery on the unjust enrichment claim are not convincing.[3] In any event, if additional discovery is necessary on the unjust enrichment claim there is ample time to permit it.

The amendment to plead an unjust enrichment claim cannot be rejected as futile as Qwest suggests. In this regard Qwest argues that the FCC's *Connect America* decision is misconstrued by Aventure and does not support an unjust enrichment claim against Qwest. That view may or may not prove out, but merits review for futility is very limited. Only if a proposed amendment is plainly legally insufficient or frivolous is it appropriate to deny leave to amend on the ground of futility. *See Becker v. University of Nebraska*, 191 F.3d 904, 908 (8th Cir. 1999); *Gamma-10 Plastics, Inc. v. American President Lines, Ltd.*, 32 F.3d 1244, 1255-56 (8th Cir. 1994), *cert. denied*, 513 U.S. 1198 (1995)(quoting *Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 644 F.2d 690, 695 (8th

---

[3] Aventure states that Sprint has not propounded any discovery directed to Aventure.

Cir. 1981)); *In re Wholesale Grocery Products Antitrust Litigation*, 2011 WL 586413, at *1 (D. Minn. 2011); 6 C. Wright, A. Miller & N. Kane*, Federal Practice and Procedure: Civil* § 1487 at 732-741 (2010). The unjust enrichment claim is not to be found futile under this standard.

Finally, it is true as Aventure states that these cases have not been under a normal progression schedule. They were stayed for a lengthy period of time. Requests were made to refer issues to the FCC and all were anticipating guidance from the Commission in matters pending before it. On July 16, 2010 Judge Gritzner lifted the stay on discovery. The Court let discovery proceed out of concern the factual trail might become cold. Shortly afterward the Court consolidated the Tier 1 cases for discovery purposes and set a schedule (since modified) only to the point of a discovery deadline, a deadline which now rapidly approaches. In the process the Court noted that "[w]hether or not issues are referred to the FCC, and eventual determination of relevant issues by the FCC, will affect the scheduling of motions and trial." (Order [155] in 4:07-cv-00043). The Court might have added that such determinations would also affect the issues to be tried, or resolved by motion. Qwest has asked the Court to set a status conference with a view toward moving its cases forward in light of the FCC's recent traffic pumping/access stimulation decisions, and the D.C. Circuit's decision in *Farmers and Merchants Mut. Tel. of Wayland v.*

7

*FCC*, ___ F.3d ___, 2011 WL 6848437 (D.C. Cir. 2011). If these cases are to be resolved by trial there is still considerable distance to go. Granting Aventure's motion will not delay the progression of these cases.

After carefully considering the matter, the Court concludes the fitful progression of the Tier 1 cases, their current status, recent decisions from the FCC, and the fact the amendments do not add wholly new or unanticipated issues so much as mend Aventure's hold in light of developing agency law, furnish good cause for Aventure's post-deadline amendment even if Aventure's level of diligence alone would not. In the absence of prejudice to the nonmovants the motion will be granted.

### III.

Aventure's motion for leave to amend affirmative claims [214] is **granted**. Aventure shall file its Amended Complaint/Counterclaims in the appropriate case files within ten (10) days.

IT IS SO ORDERED.

Dated this 12th day of March, 2012.

_____
ROSS A. WALTERS
UNITED STATES MAGISTRATE JUDGE